2009 Ark. App. 322

**Carla CHILDRESS, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

**No. CA 08–1429.**

Court of Appeals of Arkansas.

April 22, 2009.

Deborah R. Sallings, Arkansas Public Defender Commission, Little Rock, for appellant.

Gray Allen Turner, Office of Chief Counsel, for appellee.

COURTNEY HUDSON HENRY, Judge.

The Lonoke County Circuit Court terminated the parental rights of appellant Carla Childress in her daughter, M.M.P. (born June 21, 1993), and her sons, C.J.C. (born February 14, 1997), and C.R.C. (born November 20, 2000). For reversal, appellant argues that the circuit court erred by failing to obtain the two older children's consent to adoption and by finding that termination was in the children's best interest. We affirm the circuit court's termination order.

On July 19, 2007, the police arrested appellant on harassment charges. Appellant later tested positive for amphetamines, methamphetamine, THC, and cocaine. Appellee Arkansas Department of Human Services (DHS) obtained emergency custody of appellant's children on July 20, 2007. The circuit court adjudicated the children dependent-neglected and ordered appellant to maintain stable housing, to remain drug free, to submit to random drug screens, to attend and complete residential drug treatment, to attend and complete parenting classes and individual counseling, to cooperate and maintain contact with DHS, to visit the children, and to pay child support.

Appellant partially complied with the court's orders. However, she tested positive for drugs twice in the fall of 2007. Appellant entered a residential drug-treatment facility and completed the program on January 4, 2008. On January 8, 2008, appellant tested positive for cocaine. Witnesses at a February 2008 review hearing testified that appellant continued to struggle with her drug problem, despite attend-

ing counseling and living in a chemical-free facility. Approximately one week after the hearing, appellant again tested positive for cocaine. The following day, she left her chemical-free living facility after refusing to undergo a drug screen.

On June 16, 2008, DHS filed a petition to terminate appellant's parental rights. The termination hearing took place on September 12, 2008. DHS introduced two reports prepared by appellant's therapist, Robert Pruitt. The reports stated that Pruitt visited appellant's home on February 22, 2008, and found appellant argumentative and smelling strongly of alcohol. In addition, her house was in disarray, and her heating and air conditioning had been disconnected. Pruitt stated that appellant displayed poor insight into the severity of her drug addiction. Several days later, Pruitt met appellant at a city park, where she was playing with her children. Pruitt observed that appellant had rapid speech and a poor attention span. He diagnosed appellant with a substance-induced mood disorder and a histrionic personality disorder and recommended the termination of appellant's parental rights based on the "imminent danger" she posed to her children.

Family service worker Bridgette Austin testified that appellant did not complete parenting classes or aftercare drug treatment and that appellant provided only a few sign-up sheets to show her attendance at AA/NA meetings. Austin further testified that only two of appellant's eight drug screens during the case were negative. Additionally, Austin stated that appellant had lost her home to foreclosure and had not provided DHS with a new address. Austin also said that appellant was behind on child support and did not maintain contact with DHS. Austin and another witness, social-service aide Liane Guthrie, testified that they tried without success to

contact appellant on numerous occasions between March and August 2008. Austin also stated that appellant missed DHS staffings in May and August 2008 and that appellant had not visited the children in the two weeks prior to the hearing.

According to Austin, all three of appellant's children were adoptable. Austin testified that C.J.C. and C.R.C. could be adopted by their grandparents and that M.M.P.'s foster parents indicated a desire to adopt her. The children's therapist, Rania Forster, testified that fifteen-year-old M.M.P. expressed a desire to continue visiting appellant in the event the court terminated appellant's parental rights. Forster testified that she did not discuss the possibility of appellant's parental rights being terminated with eleven-year-old C.J.C. and seven-year-old C.R.C.

Kenneth Pasley, M.M.P.'s foster father, testified that appellant missed approximately half of her scheduled visits with M.M.P. Pasley said that appellant had lost her home to foreclosure and that appellant was living with her boyfriend. Pasley further testified that he had seen appellant intoxicated and that he had smelled alcohol on appellant's breath at least fourteen times since February 2008. Pasley said that he and his wife were prepared to adopt M.M.P., even though M.M.P. said that she did not want to be adopted. CASA volunteer Sky Tapp likewise testified that M.M.P. said that she did not want to be adopted. Tapp explained that M.M.P. wanted contact with her mother "but doesn't want contact if her mother can't stay straight."

Cheryl Childress, the step-grandmother of C.J.C. and C.R.C., testified that she and the children's grandfather desired to adopt the boys. Adoption specialist Glenda Shavers testified to a high probability of all three children's adoption.

Appellant also testified at the hearing. She stated that she was in no position to reunite with the children, and she asked the court for more time to improve her circumstances. However, she could not say how long it would take to do so. Appellant said that she relapsed after completing residential drug treatment in January 2008, but she insisted that she had not used drugs since March 2008. Appellant denied Kenneth Pasley's claim that she was intoxicated on several occasions in 2008, though she admitted to drinking alcohol on some nights before visiting the children. Appellant said that she was unemployed for seven months during the case but that she had worked at the same job since June 2008. Appellant stated that she had already taken a two-week leave of absence from that job. Appellant further testified that she had lost her home and had been living with her boyfriend and his fifteen-year-old daughter at an address that she could not recall. Appellant also stated that she did not complete parenting classes and that she had been unable to pay child support until shortly before the hearing.

Following the hearing, the circuit court entered an order terminating appellant's parental rights. The court found it very likely that the children would be adopted and that appellant's continued drug use and instability posed a potential harm to the children. The court also found that DHS proved by clear and convincing evidence that termination was in the children's best interest and that grounds for termination existed. The court noted appellant's continued drug use; appellant's failure to maintain stable housing and employment; appellant's inconsistent visitation; appellant's failure to complete parenting classes; appellant's failure to pay child support; appellant's failure to maintain contact with DHS; and appellant's failure to demonstrate improved parenting.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark.App. 193, 287 S.W.3d 633 (2008). The law places a heavy burden on a party seeking to terminate the parental relationship, and that party must prove facts warranting termination by clear and convincing evidence. *See id.* Clear and convincing evidence is that degree of proof which will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* On appeal, we do not reverse the circuit court's finding that the disputed fact was proved by clear and convincing evidence unless the court's finding was clearly erroneous. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark.App. 417, 278 S.W.3d 609 (2008). We give due regard to the circuit court's opportunity to judge the credibility of the witnesses. *Id.*

Appellant's first argument on appeal is that the circuit court erred by failing to obtain a consent to adoption from each of her two older children, ages fifteen and eleven. Appellant cites Arkansas Code Annotated section 9–9–206(a)(5) (Repl.2008), which provides:

(a) Unless consent is not required under § 9–9–207, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by:

. . . .

(5) The minor, if more than ten (10) years of age, unless the court in the best interest of the minor dispenses with the minor's consent.

We hold that section 9–9–206(a)(5) does not apply to termination proceedings in dependency-neglect cases. The statute requires a minor of a certain age to consent

to a "particular adoption." It is therefore utilized only where the circuit court is considering a specific petition for the adoption of a child. Thus, a consent to adoption is not a necessary element of proof when a court is considering the termination of parental rights.

Furthermore, one of the circuit court's concerns in a termination proceeding is the *likelihood* of a child's adoption, and this is but one factor for the court to consider in determining the child's best interest. Ark. Code Ann. § 9–27–341(b)(3)(A) (Repl. 2008). The guiding principle is that, when all factors are considered, the evidence must be clear and convincing that termination is in the child's best interest. *See McFarland v. Ark. Dep't of Human Servs.*, 91 Ark.App. 323, 210 S.W.3d 143 (2005). Even section 9–9–206(a)(5), when applicable, recognizes that a court may dispense with the minor's consent if the adoption is in the child's best interest. In light of these authorities, we conclude that the circuit court did not err by entering a termination order without obtaining the children's consent to an adoption.

■ Appellant's second argument is that the circuit court erred in finding that termination was in the children's best interest. Appellant analogizes her case to *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark.App. 395, 242 S.W.3d 305 (2006), where we reversed an order terminating parental rights. However, the circumstances in *Benedict* stand in sharp contrast to appellant's. Benedict suffered debilitating psychotic episodes but made immense strides in remedying her situation. She completed parenting classes, obeyed court orders, obtained stable housing, took her medication, and met most of her counseling goals. A mental-health provider and a DHS caseworker recommended that Benedict have the opportunity to demonstrate her parenting abilities before the court terminated her parental rights. In the present case, DHS, CASA, and appellant's therapist recommended termination of appellant's parental rights. They cited appellant's unstable housing, her personality disorder, her history of drug and alcohol abuse, her inconsistent effort to remedy the abuse, and her failure to cooperate with DHS and follow the case plan and court orders. Furthermore, appellant admitted her inability to regain custody of the children, and she could not predict when her situation would change for the better. The circuit court was not required to give appellant more time based on a vague hope of improvement, especially where the children had been out of appellant's custody for fourteen months.

On this record, we hold that the circuit court did not clearly err in finding that appellant's conduct posed a potential harm to the children and that termination was in the children's best interest. Because appellant does not challenge the circuit court's finding of grounds for termination, we do not address the proof on that issue.

Affirmed.

GLOVER and BROWN, JJ., agree.