

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-678

| | |
|---|---|
| AMANDA L. MITCHELL and JOHN ANTHONY MITCHELL | **Opinion Delivered** December 4, 2013 |
| APPELLANTS | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. JV-12-60] |
| V. | |
| | HONORABLE KEN D. COKER, JR. JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | |
| APPELLEES | AFFIRMED; MOTION GRANTED |

**KENNETH S. HIXSON, Judge**

Appellant Amanda Mitchell and appellant John Mitchell appeal separately from the termination of their parental rights to their twelve-year-old son T.M., eleven-year-old son Z.M., and eight-year-old daughter L.M. Amanda's sole argument on appeal is that there was insufficient evidence to support the termination of her parental rights. John's counsel has filed a no-merit appeal and a motion to withdraw, stating that there is no issue of arguable merit to advance on appeal and that she should be relieved of counsel. We affirm both appeals, and we grant John's counsel's motion to be relieved.

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2011);

SLIP OPINION

*M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

Appellee Department of Human Services (DHS) has an extensive history with this family. It began in 2003, when the appellants' children were removed from their custody for about a month due to inadequate supervision and incarceration of both parents for endangerment of a minor. In June 2010 the children were placed in foster care at Amanda's request due to alcohol abuse and domestic violence in the home. After Amanda and John completed various DHS services including counseling and parenting classes, the children were returned to them in May 2011. In December 2011, DHS opened a protective-services case based on findings that the parents stayed drunk most of the time, that John abused Amanda in front of the children, and that the children were scared at home due to the domestic violence. It was found that Amanda had recently been arrested for public intoxication, disorderly conduct, and criminal mischief. John tested positive for THC, and Amanda refused to take a drug test.


SLIP OPINION

The most recent removal of the children occurred on March 13, 2012, when the trial court entered an ex parte order for emergency DHS custody. The emergency order was based on an affidavit by a family service worker regarding events that occurred on the morning of March 10, 2012. On that morning, DHS received a call stating that Amanda was drunk and going from house to house in her neighborhood. The police were dispatched to the appellants' residence, and the police found Amanda to be intoxicated with multiple bruises, swelling, and abrasions on her face and neck. Amanda registered .19 on a breathalyzer test, and she indicated that John had caused her injuries the night before when they were drinking whiskey. Amanda said that John had whipped her with a dog leash and locked her in the dog pen in their living room, which occurred in the presence of their daughter. Amanda's daughter had to let Amanda out of the cage. John had left home with the boys before the police arrived that morning.

On April 13, 2012, the trial court entered an order adjudicating the children dependent/neglected due to the parents' alcohol abuse and domestic violence. The goal of the case was reunification, and the parents were given visitation supervised by DHS. Both Amanda and John were ordered to submit to drug and alcohol screens, attend parenting classes, attend counseling, submit to a psychological evaluation and follow any recommendations, attend anger-management classes, and maintain stable housing and employment. John was ordered to submit to a drug-and-alcohol assessment, and Amanda was ordered to complete inpatient substance-abuse treatment.

On April 16, 2012, the trial court entered an emergency ex parte order suspending John's visitation, and a subsequent order suspending John's visitation was entered on June 11, 2012. These orders were based on proof that, after the children were taken into DHS custody, the appellants were drinking together on March 28, 2012, and John dragged Amanda by her hair, kicked her, sprayed roach spray in her face, and choked her until she blacked out. As a result of this abuse Amanda suffered broken ribs, a punctured lung, and a lacerated liver, for which she underwent surgery and an extended stay in the intensive-care unit. These acts ultimately resulted in a felony conviction against John for domestic battery, for which he received a two-year prison sentence followed by a four-year suspended imposition of sentence.

On November 2, 2012, the trial court entered an order terminating reunification services because there was little likelihood that further services would result in successful reunification. The no-reunification order was based on proof that John was in prison, and that Amanda was not visiting the children and continued to drink alcohol excessively. An affidavit of a family service worker stated that Amanda drank alcohol for a week straight beginning on September 9, 2012, and then tried to commit suicide. The affidavit further stated that Amanda was unstable and had failed to cooperate with DHS or the court's orders. On November 21, 2012, the trial court entered a permanency-planning order changing the goal of the case to termination of parental rights and adoption.

DHS filed a petition to terminate both parents' parental rights on December 14, 2012. The termination hearing was held on April 15, 2013.



On May 3, 2013, the trial court entered an order terminating both Amanda's and John's parental rights to their three children. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Ark. Code Ann. section 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2011). The trial court also found clear and convincing evidence of these two statutory grounds under subsection (b)(3)(B):

> (vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.
>
> . . . .
>
> (ix)*(a)* The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
> > *(3)(A)* Have subjected any juvenile to aggravated circumstances.
> > > *(B)* "Aggravated circumstances" means:
> > > > *(i)* . . . [A] determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

At the termination hearing, Amanda testified that she had lived in a one-bedroom apartment for the past four months. Amanda stated that she had plans to move into a three-bedroom trailer in about six weeks. She acknowledged that since her children were removed in March 2012 she has lived in five different places. Amanda stated that she was unemployed, but that she has lupus and draws a monthly disability check.

SLIP OPINION

Amanda acknowledged that she has had alcohol-abuse issues for the past thirteen years, and she said that she consistently endured domestic violence from John throughout their marriage. Despite their turbulent and violent relationship, Amanda remained in a relationship with John until he was incarcerated in September 2012. However, Amanda filed for divorce against John in January 2013, and she thought the divorce would be final a few weeks after the termination hearing.

Amanda testified about a fire at her residence in early January 2013. Amanda stated that she got drunk and forgot to turn off a burner on the stove, which caused the fire. Amanda said that while the house was on fire she was on the floor, was depressed, and did not want to leave the building. The house was full of smoke, and a fireman had to physically remove Amanda from the house.

As a result of the circumstances of the house fire, Amanda's family had her involuntarily committed to a twenty-one-day inpatient alcohol-treatment program, which she completed. However, two days after her release from the rehabilitation program, Amanda was cited for public intoxication. She explained that this occurred in early February 2013 and that she got drunk because she was depressed. Amanda claimed that she had not consumed alcohol since then and had been sober for the past few months. Amanda testified that she thought she could provide a safe home for the children with John removed from her life. She said that she was taking parenting classes, which she would complete in a couple of weeks. Amanda asked that her parental rights not be terminated, and that she be given a couple of months to prepare a suitable home for the children.



John testified that he was still incarcerated at the time of the termination hearing, but that he expected to be paroled in four or five months. John stated that upon being paroled he had a job lined up and planned to move in temporarily with his mother. John thought that he could be in a position to take his children back shortly after his release from prison.

Melissa Cain was the DHS caseworker assigned to this case. Ms. Cain testified that after the children were removed in March 2012 neither parent maintained stable housing, and she said that "they weren't supposed to be together so they were pretty much in hiding." According to Ms. Cain, neither party completed any of the services offered by DHS. Ms. Cain stated that the last time Amanda visited the children was almost a year before the termination hearing on May 23, 2012.

Ms. Cain testified that L.M. had made dramatic improvement since being removed from her parents' home, and that her foster parents were interested in adopting her. Ms. Cain stated that the two boys, T.M. and Z.M., had behavioral issues but had no medical issues that would prevent their adoption. She said that DHS had been successful in adopting children with these characteristics in the past, and she thought that the boys were adoptable. Ms. Cain gave the opinion that there would be a great potential for harm in placing the children back in the custody of their parents, and that termination of parental rights was in the children's best interest.

In Amanda's appeal to this court, she challenges the sufficiency of the evidence supporting termination of her parental rights. Specifically, Amanda argues that the trial court erred in finding that termination was in the best interest of her children. Amanda submits that



she was a victim of domestic violence for many years but has made the decision to terminate her relationship with her abuser, John. Amanda asserts that she has been striving to overcome the obstacles to complete the necessary goals to provide a home for her family, noting that she has completed alcohol rehabilitation and is taking parenting classes. Amanda contends that she should have been given more time to rectify her situation and to prove she could provide a stable home.

Amanda also contends that termination of her parental rights was not in the best interest of her boys because they have exhibited significant behavioral problems, even to the point of harming a foster parent, which makes their adoption unlikely. Amanda also notes that her oldest son, T.M., is now twelve years old and likely would not consent to being adopted.

We hold that the trial court did not clearly err in finding that termination of Amanda's parental rights was in the best interest of the children. Amanda has a long history with DHS, and despite the repeated offer of DHS services Amanda failed to demonstrate that she could provide a suitable and safe home for her children. Amanda had five different residences since the most recent removal of the children in March 2012, she failed to comply with the caseplan, and she had not visited the children since May 2012. Amanda presently lives in a one-bedroom apartment and said she wanted more time to obtain a suitable home and complete parenting classes. However, we have held that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849.


SLIP OPINION

In addition to having no suitable place for the children to live, Amanda has a long history of alcohol abuse and this continued long after John's incarceration. In particular, Amanda's conduct had near-deadly consequences in January 2013 when she got drunk and accidently set her house on fire, and then chose to remain in the house and had to be physically removed by a fireman. And although Amanda completed inpatient alcohol treatment, this was forced on her by her family, and she was cited for public intoxication just two days after her release. There was also evidence that, on a previous occasion in December 2012, Amanda had called the police, reporting that she needed help and had harmed herself by cutting her forearms. And although Amanda testified that she did not plan to reunite with her abusive husband upon his release from prison, the trial court understandably thought, based on her history of staying with him in the past (including after John had put her in intensive care), that she would again be back with John. There was ample evidence showing that there would be significant potential harm to the children if returned to Amanda's custody.

While Amanda suggests that T.M. and Z.M. are not likely to be adopted, there was evidence to the contrary, and at any rate we have held that adoptability is but one factor that is considered when making a best-interest determination. *See Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285. The guiding principle is that, when all factors are considered, the evidence must be clear and convincing that termination is in the child's best interest. *Childress v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 322, 307 S.W.3d 50. We have also held that a child's consent to an adoption, which may be required for a child over twelve years of age under Ark. Code Ann. section 9-9-206(a)(5) (Supp. 2011), is not a



necessary element of proof when a court is considering termination of parental rights. *See id*. Considering the evidence before the trial court demonstrating Amanda's instability and inability to provide a safe and suitable home for the children, we conclude that the trial court's finding that termination was in the children's best interest was not clearly erroneous.

Although Amanda's point on appeal only makes reference to the best-interest requirement for termination of parental rights, in her conclusion she also states that "the statutory requirements were not met." However, we disagree. Proof of only one statutory ground is sufficient to terminate parental rights. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526. In this case the trial court found, pursuant to Ark. Code Ann. section 9-27-341(b)(3)(B)(ix)*(a)*, that Amanda had subjected the children to aggravated circumstances because there was little likelihood of successful reunification. In view of the evidence discussed above, we hold that this finding was not clearly erroneous.

We now turn to John's no-merit appeal. In compliance with *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(i), John's counsel has examined the record for adverse rulings, explaining why each adverse ruling would not support a meritorious ground for reversal. John's counsel has accurately asserted that the only adverse ruling was the termination itself. A copy of John's counsel's brief and motion to withdraw were sent to John at his last known address, with information about his right to file a list of pro se points. However, the packet was returned and marked "paroled." John's counsel has no additional contact information.

We agree with John's counsel that any challenge to the sufficiency of the evidence supporting the termination of his parental rights would be wholly without merit. The evidence showed that throughout the course of his marriage to Amanda he physically abused her in front of his children, and his severe domestic abuse ultimately resulted in a felony conviction and prison sentence. At the time of the termination hearing John was still in prison. The trial court's finding that John had subjected his children to aggravated circumstances, and its finding that termination was in the best interest of the children, were not clearly erroneous.

After examining the record and the briefs presented, we affirm the termination of Amanda's parental rights. Moreover, we have determined that John's counsel has complied with our requirements for no-merit cases and that his appeal is wholly without merit. Accordingly, we affirm the order terminating both appellants' parental rights, and we grant John's counsel's motion to be relieved from representation.

Affirmed; motion granted.

GLOVER and WOOD, JJ., agree.

*Janet Lawrence*, for appellant Amanda L. Mitchell; *Leah Lanford*, Arkansas Public Defender Commission, for appellant John Anthony Mitchell.

*Tabitha B. McNulty*, Office of Chief Counsel, and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.

SLIP OPINION