LARRY D. VAUGHT, Judge
Jamie Guardado appeals the Grant County Circuit Court's order terminating her parental rights to five of her six children, R.M., L.M., E.G., L.G., and J.G.[1] We affirm.
On April 26, 2016, the Arkansas Department of Human Services (DHS) took emergency custody of thirteen-year-old twins R.M. and L.M., ten-year-old E.G., nine-year-old L.G., and two-year-old J.G. due to neglect, educational neglect, inadequate shelter, and Guardado's drug use. The court subsequently adjudicated the children dependent-neglected based on neglect and parental unfitness, which was in part based on the fact that Guardado tested positive for amphetamines and methamphetamine. The court also found that Guardado had been arrested on felony charges on the day of the adjudication hearing, lacked stable housing, and had made false statements to the court.
The court held review hearings in November 2016 and February 2017, after both of which the court found Guardado in substantial compliance with the case plan. Guardado was granted overnight visitation with her children until a maltreatment allegation arose against Guardado's live-in boyfriend, Yengenis Antonio Vallejo Martinez ("Tony").[2] The court then entered a no-contact order prohibiting Tony from being around the children. Following a permanency-planning hearing in March 2017, the court found that Guardado was in substantial compliance with the case plan but also found that she had suffered a "setback" due to relying on others for financial support. The court ordered that Guardado show financial stability and provide DHS with her pay stubs and work schedule.
After several continuances, the court held a fifteen-month review hearing in September 2017. The court found that although Guardado had made measurable progress on the case plan, she had failed to attend the trauma therapy that had been recommended for her in July 2017, and she lacked financial stability sufficient to care for her children. The court continued the goal of reunification but ordered Guardado to comply with trauma therapy and show financial stability by obtaining employment to help provide for her children. The court subsequently ordered Guardado to seek *298 child-support arrearages owed to her, which she did.
On December 13, 2017, the court authorized DHS to file a petition to terminate Guardado's parental rights, which it filed on January 3. The petition alleged that termination was appropriate under several grounds: "failure to provide significant material support" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)(a) (Supp. 2017); "failure to remedy" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(a) ; "subsequent factors" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) ; and "aggravated circumstances" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3)(A) -(B)(i) .
The court held a termination hearing on April 30, 2018. Following the hearing, the court entered an order terminating Guardado's parental rights. The court found that Guardado's testimony at the hearing was not credible, especially as to her relationship with Tony. The evidence revealed that Tony's name was still on the lease for Guardado's apartment; her only form of transportation was his car, which she claimed he had given her; and she continued to rely on Tony and her family to support her financially. Moreover, Guardado had another child with Tony during the pendency of the case. The court also found that Guardado still lacked stable and adequate income and housing, did not have an appropriate childcare plan should the children be returned to her custody, lacked stable transportation, had not consistently visited the children, had not provided support for the children, had not complied with court-ordered trauma therapy, continued to rely on friends and family to resolve her financial problems, had been arrested twice during the pendency of the case for failure to pay court fines, and had not complied with the case plan. The court also found that the children are adoptable, that returning them to Guardado's custody would pose a risk to their health and safety, and that termination is in their best interest.
The standard of review in appeals of termination of parental rights is de novo, but we reverse a circuit court's decision to terminate parental rights only when it is clearly erroneous. Ullom v. Ark. Dep't of Human Servs. , 340 Ark. 615, 12 S.W.3d 204 (2000) ; Mitchell v. Ark. Dep't of Human Servs. , 2013 Ark. App. 715, 430 S.W.3d 851 ; Brewer v. Ark. Dep't of Human Servs. , 71 Ark. App. 364, 43 S.W.3d 196 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. Wade v. Ark. Dep't of Human Servs. , 337 Ark. 353, 990 S.W.2d 509 (1999) ; Knuckles v. Ark. Dep't of Human Servs. , 2015 Ark. App. 463, 469 S.W.3d 377 ; Hopkins v. Ark. Dep't of Human Servs. , 79 Ark. App. 1, 83 S.W.3d 418 (2002).
Guardado challenges the sufficiency of the evidence supporting the court's findings that DHS adequately proved four independent statutory grounds for termination. We have repeatedly held that DHS need only prove one ground for termination, so we must affirm if the evidence supports at least one of the statutory grounds at issue in this case. Martin v. Ark. Dep't of Human Servs. , 2016 Ark. App. 521, at 11, 504 S.W.3d 628, 635.
Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3) establishes a statutory ground for the termination of parental rights when "[a] determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3) . Guardado does not contest the court's finding that *299 there is little likelihood that additional family services would result in successful reunification; her only argument is that the circuit court erred in finding that DHS had provided meaningful services throughout the case. This argument has no merit. We have previously held that "a finding of aggravated circumstances does not require that DHS prove that meaningful services toward reunification were provided." Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, at 9, 538 S.W.3d 842, 849 (citing Draper v. Ark. Dep't of Human Servs. , 2012 Ark. App. 112, 389 S.W.3d 58 ). Because Guardado has raised no other challenge to the court's aggravated-circumstances finding, and because DHS need only prove one statutory ground supporting termination of parental rights, we affirm the circuit court's finding that termination was supported by sufficient evidence.
Guardado's second point on appeal is a challenge to the court's finding that termination is in the children's best interest. In addition to finding a statutory ground for termination, an order terminating parental rights must also be based on clear and convincing evidence that the termination is in the child's best interest. Smith v. Ark. Dep't of Human Servs. , 2018 Ark. App. 380, at 6, 555 S.W.3d 896, 900. When making a best-interest determination, the circuit court must consider the likelihood the child will be adopted and the potential harm the child would face if returned to the parents. Id. Potential harm must be viewed in a forward-looking manner and considered in broad terms. Id.
Guardado's best-interest argument does not challenge the court's adoptability finding. Instead, she seems to argue that because the parties stipulated that the children would prefer to be returned to their mother's custody if their home was safe and stable, the termination decision was against their best interest. We disagree. To the extent that Guardado is challenging the court's potential-harm finding, she fails to address the facts on which the court's finding was based: her "continued instability and failure to comply with the case plan and this Court's orders." Specifically, the court discussed Guardado's ongoing "toxic relationship" with Tony, her reliance on him and others for transportation and financial support, her failure to complete trauma therapy or provide DHS with evidence of her employment, her failure to consistently visit the children or provide for their support, her reliance on an inappropriate childcare plan should they be returned to her care,[3] and the fact that she had inadequate housing and income to accommodate the children. While the children expressed a preference for returning home with Guardado so long as her home was safe and stable, the court's risk-of-harm finding demonstrates that Guardado's home was not safe and stable. Moreover, Guardado has cited no legal authority, and we are aware of none, that would mandate that the circuit court's best-interest determination must accommodate a child's stated preference regarding custody. The court considered the children's wishes but found that Guardado's instability and unwillingness to comply with the case plan presented a risk of harm to their health and safety. We affirm.
Affirmed.
Gruber, C.J., and Klappenbach, J., agree.

Guardado also has a sixth child, born in February 2018, who is not a party to this case.

Tony is the father of Guardado's youngest child, born during the pendency of this case. The record contains multiple variations of Tony's first name, including "Yengenis" and "Genesis."

Guardado testified that she worked as a home healthcare aide and planned to bring all six of her children, including an infant son born in February 2018, to work with her while she cared for her clients.