Cite as 2019 Ark. App. 442

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-19-476

|  |  |
|---|---|
| LISA WHITEHEAD<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** October 2, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION<br>[NO. 60JV-17-879]<br><br>HONORABLE JOYCE WILLIAMS WARREN, JUDGE<br><br>AFFIRMED |

### MIKE MURPHY, Judge

Lisa Whitehead appeals the Pulaski County Circuit Court's order terminating her parental rights to her two children. On appeal, she argues that the termination of her parental rights was not in her children's best interest. We affirm.

At the time of the termination, one child was sixteen and the other was thirteen. On appeal, the crux of Lisa's argument is that termination was not in the children's best interest because they did not want to be adopted and wanted to remain together.

The Arkansas Department of Human Services (DHS) became involved with this family in June 2017, when the family's apartment caught fire. While being interviewed, the children disclosed that Lisa used drugs in front of them. Lisa admitted using marijuana and sherm[1] and tested positive for PCP. DHS opened a protective-services case and made

---

[1]Cigarettes dipped in PCP.

referrals to provide Lisa with services. The boys went to live with a cousin, but when the cousin could no longer care for the children, DHS took a seventy-two hour hold on the juveniles.

In August 2017, the court found that probable cause existed to continue custody with DHS, and the children were adjudicated dependent-neglected the next month. The court found the children were dependent-neglected and made specific findings that the mother lacked stable housing, refused services, and had positive drug screens for PCP and cocaine.

The case progressed, and while Lisa had some compliance with the court's orders throughout the case, she was never in full compliance, and there was never a point in which the children could be safely placed with her. On December 7, 2018, DHS filed a petition seeking termination of Lisa's parental rights, alleging the grounds of failure to remedy,[2] subsequent factors,[3] and aggravated circumstances.[4]

On February 27, 2019, the circuit court held a termination hearing. It heard testimony from Lisa, who testified that at the time of the hearing, she was staying with a friend, did not have a job, had used PCP three weeks before the hearing, and had not completed any of the drug-treatment classes. It next heard testimony from the caseworker, Lauren Hill. Lauren corroborated much of Lisa's testimony and further testified that if the boys were returned to Lisa they would be returned to a "very unstable, unpredictable, and

---

[2]Ark. Code Ann. § 9-27-341(b)(3)(B)(i) (Supp. 2017).

[3]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii).

[4]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix).

2

unsafe home environment." She said that it was extremely important for the boys to maintain their sibling bond and that they wanted to reunify with their mother. Lauren further testified that the older boy was almost seventeen and his consent would be required for any adoption. She stated that DHS was unable to find a relative who would assume custody of the boys. A maternal aunt was willing to take the boys, but DHS was concerned about the size of her apartment and her suspended license. The aunt did resolve her license issue, but Lauren said there was a lack of movement regarding that placement because the aunt was not returning Lauren's calls.

An adoption specialist also testified. She said that the boys are adoptable and there are ninety-two families in the database willing to adopt a sibling group such as theirs. She also testified that when a child is unwilling to consent, DHS moves forward with adoption for the other child alone. She stated that there have been situations in which children do not want to be adopted but ultimately do consent to an adoption. She believed there were no barriers to these boys being adopted.

At the conclusion of the hearing, the court granted DHS's petition to terminate Lisa's parental rights to her sons on all three grounds pleaded by DHS. An order was entered to that effect on March 25, 2019, and Lisa timely appealed. On appeal, she argues that the termination of her parental rights was not in the children's best interest.

Termination-of-parental rights cases are reviewed de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, at 1, 430 S.W.3d 851, 852. The termination-of-parental-rights analysis is twofold; it requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *Fisher v. Ark. Dep't of Human Servs.*,

2019 Ark. App. 39, at 4, 569 S.W.3d 886, 888. The first step requires proof of one or more of the nine enumerated statutory grounds for termination. *Id*. The second step, a best-interest determination, must consider the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. *Id*.

The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Mitchell*, 2013 Ark. App. 715, at 2, 430 S.W.3d at 853. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. Due regard is given to the circuit court's opportunity to judge the credibility of the witnesses. *Childress v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 322, at 5, 307 S.W.3d 50, 53.

On appeal, Lisa does not challenge the statutory grounds and instead limits her argument to the best-interest determination. But even within her best-interest argument, Lisa does not address the findings associated with adoptability or potential harm. Because she has not challenged the court's decision as to the grounds for termination, adoptability, or potential harm, we need not address them now. *Fisher*, 2019 Ark. App. 39, at 5, 569 S.W.3d at 888. Instead, Lisa contends that the circuit court's decision to terminate her parental rights was erroneous and not in the children's best interest when considering the age of the children, their desire for reunification, and her request for additional time. We reject Lisa's arguments.

Lisa contends that the boys' older ages make it harder for them to find adoptive homes and that their desire to maintain a relationship with their mother and each other

4

would always put any potential adoption at risk. Lisa did not advance these arguments to the circuit court and they are not preserved for appellate review. *See, e.g.*, *Strickland v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 608, at 11, 567 S.W.3d 870, 877.

Second, the circuit court accepted and considered evidence concerning the children's preferences regarding placement and adoption, but DHS was not required to provide any proof on the issue of consent to adoption. *See, e.g.*, *Guardado v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 16, at 6, 568 S.W.3d 296, 299 ("Guardado has cited no legal authority, and we are aware of none, that would mandate that the circuit court's best-interest determination must accommodate a child's stated preference regarding custody."). Moreover, Lisa failed to preserve any argument regarding the children's preferences or likelihood of consent. *Brabon v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 2, at 6, 388 S.W.3d 69, 72 (rejecting appellant's argument that "the children did not want to be adopted and that they were old enough to have their consent required" when the argument was not made below).

Regarding her request for additional time, we have long held that a "a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances." *Mitchell*, 2013 Ark. App. 715, at 8, 430 S.W.3d at 856. Indeed, regarding the nineteen-month-long case, Lisa conceded that both DHS and the circuit court "[t]ried to give me as much as time as possible and I know that y'all can't just keep prolonging this on and prolonging this on until I get myself on track to where I need to be; I don't know how much time that I need." The circuit court was not required to give Lisa

more time based on a vague hope of improvement, especially when the children had been out of her custody for nineteen months.

Finally, no evidence was presented to the circuit court regarding a viable relative-placement or custody option; thus, it was not clear error for the circuit court to find that termination of Lisa's parental rights was in the children's best interest. At the termination hearing, Lisa conceded that she did not have any available, appropriate relatives willing to take custody of her children. In addition, Lauren testified about DHS's efforts to pursue the possibility of permanent custody with a relative and two fictive kin. However, none of the three individuals identified were willing to follow through with the process. Therefore, the circuit court did not err in finding that it was in the children's best interest to terminate Lisa's parental rights.

Affirmed.

GRUBER, C.J., and HARRISON, J., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.