
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–652

| | |
|---|---|
| AMANDA MILLER | Opinion Delivered: DECEMBER 16, 2015 |
| APPELLANT | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. JV-14-38] |
| V. | |
| | HONORABLE KEN D. COKER, JR., JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Amanda Miller appeals from the termination of her parental rights to her three daughters, A.C., age ten, E.M., age six, and N.M., age two.[1] On appeal, Amanda argues that there was insufficient evidence to support any of the statutory grounds for termination. We affirm.

We review termination of parental rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997).

---

[1] E.M.'s and N.M.'s father, William Miller, had his parental rights terminated, and A.C.'s father, Patrick Dowell, had his parental rights terminated. Neither of the fathers has appealed.

SLIP OPINION

Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

Amanda Miller is married to William Miller, the biological father of the two youngest children and A.C.'s stepfather. On July 30, 2014, appellee Department of Human Services (DHS) filed a petition for emergency custody of all three children based on allegations that A.C. had been repeatedly raped by her stepfather. Attached to the petition was an affidavit stating that the Arkansas State Police had received a report from the child abuse hotline, and that investigators subsequently interviewed A.C., E.M., and Amanda. During her interview, A.C. disclosed that William had been having vaginal, anal, and oral sex with her for more than a year. A.C. was able to describe the events in detail, and stated that it happened "all the time." A.C. indicated that the sexual abuse had occurred in her bedroom, in his bedroom, and in the shed, and that it always happened when her mother was not at home. A.C. stated that she never told her mother about this because she was afraid that her mother might get mad at her.

During the interview with E.M., E.M. stated that she had seen A.C. "eat daddy's hoo hoo," which is what she called his penis. E.M. also told the investigator that she had told her mother about what she had seen, to which her mother replied, "Okay."

When Amanda was interviewed and asked about these allegations, she denied that A.C. could have been abused, stating that William had never been alone with A.C. and that A.C. was not telling the truth. Amanda also denied that E.M. had ever told her anything about the abuse.

Based on the information in the affidavit, the trial court entered an ex parte order for emergency custody of all three children on July 30, 2014. A probable-cause order was entered on August 19, 2014, wherein the trial court found probable cause that the emergency conditions continued and that it was necessary for the children to remain in DHS custody.

An adjudication hearing was held on November 19, 2014. At the adjudication hearing, DHS played a video recording of A.C.'s statements to the investigator describing in detail how A.C.'s stepfather had committed the sexual abuse against her. A recording of E.M.'s interview was also introduced.

On December 18, 2014, the trial court entered an adjudication order finding the children to be dependent-neglected. In the adjudication order, the trial court specifically found the recorded testimony of A.C. to be very credible. The trial court's finding of dependency-neglect was based on clear and convincing evidence of William's chronic sexual abuse of A.C. and Amanda's failure to protect A.C. from the sexual abuse.

SLIP OPINION

DHS filed a petition to terminate Amanda's parental rights, and the termination hearing was held on March 31, 2015. The trial court entered an order terminating Amanda's parental rights to all three of her children on May 18, 2015.

In the termination order, the trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2015). The trial court also found clear and convincing evidence of the following three statutory grounds under subsection (b)(3)(B):

> (vi)*(a)* The court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents.
>
>         . . . .
>
> (vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
>
>         . . . .
>
> (ix)*(a)* The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
>     *(3)(A)* Have subjected any juvenile to aggravated circumstances.
>     *(B)* "Aggravated circumstances" means:
>     *(i)* A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

SLIP OPINION

In the termination order, the trial court found that Amanda had steadfastly denied that any sexual abuse had occurred, that she did not intend to separate from William, and therefore that Amanda's failure to protect her children would continue if any of her children were returned to her.

In her testimony at the termination hearing, Amanda stated that she did not believe that any sexual abuse had occurred and that "I haven't believed A.C. since day one." Amanda maintained that she never left her children alone with her husband, and stated that she would need to see physical proof before she would believe that anything had happened. Amanda testified that "I just don't believe my daughter and I never will." When asked if she would be willing to undergo counseling to try to see things a different way, Amanda replied, "I'd undergo the counseling but I still just don't think he did it." Amanda indicated that she thought that no amount of counseling would change her mind, but that she would be "willing to give it a shot."

On cross-examination, Amanda testified that although A.C. had told her about being sexually abused at the age of five, A.C. said that she was joking. Amanda stated that A.C. would always talk about sex at the age of five. Amanda also acknowledged that, despite her home being in an extreme state of uncleanliness, she found time to pull the carpet out of A.C.'s bedroom after DHS removed the children from the home. According to A.C.'s statements, William had ejaculated on this carpet during the times that he had abused her in her bedroom. Amanda stated that she wanted the carpet gone because A.C. had been using the bathroom on it and it smelled. DHS workers, however, suspected that Amanda had removed the carpet to cover up the abuse.

Melanie Taylor, A.C.'s counselor, testified that she counseled A.C. due to the trauma associated with being sexually abused. Ms. Taylor stated that during the visits A.C. would sometimes exhibit aggression and act out sexually. When Ms. Taylor spoke with Amanda about the sexual abuse, Amanda told her that A.C. was lying. According to Ms. Taylor, Amanda told her that there was something in William's background that happened a long time ago and that she went to great lengths to make sure that he was never alone with the children. Ms. Taylor testified that there was not much of an emotional attachment between Amanda and A.C., and that she did not think Amanda would support A.C. Ms. Taylor further indicated that she did not think Amanda would ever acknowledge that any problem existed involving sexual abuse, and that Amanda showed no willingness to be open to that idea or try to work on the issue through counseling.

Arkansas State Police Investigator Sherry Buckner was the investigator who interviewed A.C. about the suspected abuse. Investigator Buckner made a true finding of sexual abuse by William and a true finding of failure to protect on Amanda. Upon speaking with Amanda, Investigator Buckner believed that Amanda knew that William had been molesting A.C. According to Investigator Buckner, Amanda was very antagonistic toward A.C. and seemed to have little concern for her. When Investigator Buckner spoke to Amanda about a protection plan, Amanda immediately told her that both A.C. and E.M. could live with Amanda's mother.

DHS caseworker Rachel Freeman observed the visits between Amanda and her children. Ms. Freeman testified that Amanda was very loving toward E.M. and N.M., but that she was very negative toward A.C. Ms. Freeman stated that A.C. would repeatedly tell

Amanda, "I love you mom," but that Amanda would not tell A.C. that she loved her and would not give A.C. a hug. Ms. Freeman said that Amanda did not seem to care about A.C., almost as if she was not her child, and that Amanda told Ms. Freeman that she did not want to visit A.C. anymore. Ms. Freeman also stated that, since the children had been removed from the home, Amanda had sold most of the children's belongings.

DHS worker Keith Thomas testified that the children were adoptable. Mr. Thomas testified that Amanda blamed the children for everything that had occurred, and that the children would be at risk of harm if they were returned to their parents.

In this appeal, Amanda does not challenge the trial court's finding that termination of her parental rights was in her children's best interest. Instead, she challenges each of the statutory grounds found by the trial court in support of the termination order.

As to the ground for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vi), which permits termination when a juvenile has been found dependent-neglected as a result of neglect or abuse that could endanger the life of the child, or sexual abuse perpetrated by a parent or stepparent, Amanda contends that this ground was not sufficiently alleged in DHS's termination petition. Amanda asserts that the petition only alleged that it was seeking termination under the sexual-abuse element of this ground as it applied to William, and not on the neglect element of this ground. As such, Amanda argues that she was not put on proper notice of this ground, and that this ground must be excluded as one capable of supporting termination.

The two remaining grounds are the "other factors" ground pursuant to subsection (b)(3)(B)(vii), and the "aggravated circumstances" ground pursuant to subsection

(b)(3)(B)(ix). Amanda argues that neither of these grounds supports termination because DHS never offered her any counseling to address her denial that sexual abuse had been committed by William against A.C. The "other factors" ground is dependent on "the offer of appropriate family services," and "aggravated circumstances" includes an element that "there is little likelihood that services will result in successful reunification." Because DHS made no effort to provide counseling services to Amanda, she contends that neither of these grounds was established and that the order terminating her parental rights should be reversed.

We do not agree with Amanda's contention that there were no statutory grounds supporting the termination order. Only one statutory ground must be proved to support the termination of parental rights. *Willingham v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 568. On this record, we conclude that the trial court committed no error in finding that Amanda had subjected her children to aggravated circumstances pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)*, because there was little likelihood that services to the family would result in successful reunification.

The reason the children were removed from the home was because of sexual abuse committed against A.C. by Amanda's husband, William. A.C. gave a detailed account about how William repeatedly executed the sexual abuse over a period of more than a year, and the trial court found A.C. to be very credible. Despite this evidence of abuse, and evidence that both A.C. and E.M. had at some point disclosed sexual abuse to Amanda, Amanda refused to believe that anything inappropriate had occurred. Amanda made it clear in her testimony that she never believed A.C., and that she would never believe that any sexual

abuse occurred without physical proof. From the testimony of DHS's witnesses, it was clear that Amanda had shown virtually no affection or concern for A.C. since the allegations of abuse had surfaced. Although Amanda did agree that she would give counseling "a shot," she also indicated that counseling was not going to change her mind about whether any sexual abuse had occurred. Given Amanda's denial of the abuse and her disregard of A.C.'s well-being, the trial court correctly determined that Amanda's failure to protect her children would continue if the children were returned to her. Based on the evidence presented, we hold that the trial court's finding that there was little likelihood that services would result in successful reunification was not clearly erroneous. Therefore, there were statutory grounds to support the termination of Amanda's parental rights, and we affirm the termination order.

Affirmed.

GRUBER and BROWN, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.