
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-443

| | |
|---|---|
| DIANE BEARD<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered: OCTOBER 5, 2016<br><br>APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70JV-14-146]<br><br>HONORABLE EDWIN KEATON, JUDGE<br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Diane Beard appeals from the termination of her parental rights to her son, E.J.[1] On appeal, Diane argues that there was insufficient evidence to support the grounds for termination.

We review termination of parental rights cases de novo. *Miller v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 727, 479 S.W.3d 63. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a

---

[1]E.J.'s putative father failed to appear at any of the hearings or establish any significant contacts with the child, and the trial court dismissed him from the case based on its finding that no legal rights had attached.

firm conviction as to the allegation sought to be established. *Miller, supra.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case began on July 3, 2014, when appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody of Diane's three children, E.J., T.J., and J.J. At the time, E.J. was two months old, and his older siblings were ten and eleven years old. Attached to the petition was an affidavit of a DHS employee stating that E.J. had been hospitalized with multiple fractures to his ribs, leg, and arm, and had an apparent burn injury to his nose. Diane told investigators that E.J. had fallen from a bed. Based on Diane's statement that T.J. was jealous of E.J. and did not like him, there were concerns that T.J. had been purposely harming E.J. The trial court entered an ex parte order for emergency custody of all three children on the same day DHS's petition was filed.

On August 27, 2014, the trial court entered a probable-cause order finding probable cause that the emergency conditions necessitating removal of the children continued. On October 3, 2014, the trial court entered an order adjudicating the children dependent-neglected. The stated goal of the case was reunification, and Diane was ordered to maintain stable and suitable housing, maintain stable employment, complete parenting classes, undergo a psychological evaluation, and participate in counseling. Review orders were

entered on January 13, 2015, and March 25, 2015. The review orders indicated that DHS was making reasonable efforts to provide services to achieve the goal of reunification and that Diane had complied with some of the case plan. In the permanency-planning order entered on August 4, 2015, the trial court found that DHS was making reasonable efforts and that Diane was complying with the case plan and making measurable progress, although she did not have a suitable home for the children.

In a fifteen-month review order entered on November 30, 2015, the trial court changed the case goal concerning E.J. to termination of parental rights and adoption. The trial court found that Diane had complied with the case plan in some capacity but did not have suitable housing, nor did the court have a sense of when Diane might have a suitable home for the children. Although the older children, T.J. and J.J., could not be returned home at that time, the trial court found that termination of parental rights was not in their best interest. The permanency plan for T.J. and J.J. was relative placement.

On December 30, 2015, DHS filed a petition to terminate Diane's parental rights as to E.J. only. The termination hearing was held on February 1, 2016, and on March 4, 2016, the trial court entered an order terminating Diane's parental rights to E.J.

In the termination order, the trial court found by clear and convincing evidence that termination of parental rights was in E.J.'s best interest, and the court specifically considered the likelihood that E.J. would be adopted, as well as the potential harm of returning him to the custody of his mother as required by Ark. Code Ann. § 9-27-341(b)(3)(A)(i)&(ii). The trial court also found clear and convincing evidence of two statutory grounds. The trial court found, pursuant to subsection (b)(3)(B)(i)*(a)*, that E.J. had been adjudicated to be

3

dependent–neglected and had continued to be out of the custody of the parent for twelve

months and, despite a meaningful effort by the department to rehabilitate the parent and

correct the conditions that caused removal, those conditions had not been remedied by the

parent. Pursuant to subsection (b)(3)(B)(ix)*(a)(3)(A)(i)*, the trial court found that Diane had

subjected E.J. to aggravated circumstances, meaning that a determination had been made

that there was little likelihood that services to the family would result in the successful

reunification. The trial court specifically found:

> The Department showed that E.J. was removed from the custody of Diane Beard on July 1, 2014 and has remained in an out-of-home placement since that date. E.J. and his siblings were adjudicated dependent/neglected on August 4, 2014, finding that E.J. was in the care and custody of Diane Beard and she failed to protect E.J. from abuse which resulted in multiple broken bones and an infected area on his nose. Diane Beard has not obtained a suitable home for her children. The Court has concerns with the ability of Diane Beard to understand what E.J.'s special needs [are] and address those needs. Due to her low functioning, Diane Beard does not have the ability to protect E.J. The following services have been offered to Diane Beard to meet the goal of reunification: assistance with DHS, counseling, individual parenting classes, supervised visitation, transportation, worker contacts and casework management. . . . The Court finds that E.J. received occupational therapy, physical therapy and speech therapy resulting from the injuries caused by his sister which gave rise to this case. E.J. has PTSD and needs special attention that Diane Beard cannot provide. E.J. would be at risk of potential harm if returned to Diane Beard.

Eugenia Ford, a DHS caseworker assigned to the case, testified at the termination

hearing. Ms. Ford testified that E.J. was removed from Diane's custody due to the child's

injuries and Diane's failure to protect him. According to Ms. Ford, Diane was living in her

sister's house, and there had been no improvement in her living situation. Ms. Ford stated

that Diane received a little over $700 per month from SSI but had saved no money toward

finding her own residence. Ms. Ford indicated that Diane was lacking in her parenting

abilities as far as understanding E.J.'s injuries and disabilities, or how to address them, and

that Diane had limited ability to even care for herself. Ms. Ford noted that upon testing Diane's IQ was only 59, which falls within the extremely low range of intellectual functioning. Diane had also been diagnosed with depressive and psychotic disorder. Ms. Ford stated that extensive DHS services had been offered throughout the case, but that Diane did not have the ability to keep this special-needs child safe, and that there were no services that could result in successful reunification. Ms. Ford indicated that E.J. is adoptable and that his foster parents had expressed an interest in adopting him, and she recommended termination of Diane's parental rights so that E.J. could be adopted.

Sheryl Thornton is E.J.'s therapeutic foster parent. Ms. Thornton testified that when E.J. was taken into emergency custody he had significant developmental delays. However, since being placed in foster care, with the help of therapy, E.J. has made improvements. Ms. Thornton stated that E.J. startles very easily and has been diagnosed with posttraumatic stress disorder, for which he is receiving treatment.

Diane testified on her own behalf. She stated that she had been saving money to relocate to her own residence but that she quit saving money when she was told that she was not going to get her children back. Diane stated that she thought she could get her own place, that E.J. would be safe in her custody, and that she could provide the best care for him.

In this appeal, Diane does not challenge the trial court's finding that termination of parental rights was in E.J.'s best interest. Instead, she argues that there was insufficient evidence to support the statutory grounds found by the trial court.

SLIP OPINION

As for the "failure to remedy" ground codified at Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, Diane argues that DHS failed to offer meaningful efforts to rehabilitate her and correct the conditions that caused removal as required by the statute. Diane asserts that she has an intellectual disability for which her therapist recommended more intensive therapy services. Diane contends that, instead of providing more in-depth services as recommended by her therapist, DHS provided only the typical services such as parenting classes, home visits, transportation, counseling, and visitation. Diane acknowledges that DHS had assisted her in applying for Developmental Disability Services (DDS services), but states that she remained on a waiting list and was never offered any such services prior to her parental rights being terminated. Diane contends that, because DHS failed to offer meaningful efforts, the "failure to remedy" ground was not satisfied.

Diane further argues that there was insufficient evidence of aggravated circumstances, which under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)(i)* requires proof that there is little likelihood that services to the family will result in successful reunification. Diane contends that she has made some improvements within the limited services offered by DHS, and asserts that it is unknown whether additional services, including DDS services, would have been successful. Diane argues that DHS failed to provide services to accommodate her disability, and that it was speculative to conclude that such services would likely not have resulted in reunification. In making her argument, Diane relies on *Yarborough v. Arkansas Department of Human Services*, 96 Ark. App. 247, 240 S.W.3d 626 (2006), where we stated that there must be more than a mere prediction or expectation on the part of the trial court that reunification services will not result in successful reunification.

Only one statutory ground is necessary to terminate parental rights. *Sanford v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 578, 474 S.W.3d 503. We uphold the decision to terminate Diane's parental rights because the trial court's finding that she had subjected E.J. to aggravated circumstances was not clearly erroneous.

E.J. was initially removed from Diane's custody after E.J. was determined to have serious injuries as a result of Diane's failure to protect him. Those injuries were described as two rib fractures, a right tibia fracture, a left radius and ulna fracture, and an injury that had the appearance of a burn that had removed a portion of the child's nose. The treating physician suspected that these injuries were the result of abuse. Nineteen months after E.J.'s removal, during which time Diane had been provided with extensive DHS services, she was no closer to being able to safely care for E.J. than at the time of his removal. There was considerable evidence of Diane's extremely low intellectual functioning and psychological problems, which, according to the caseworker, contributed to Diane's inability to understand and appreciate E.J.'s special needs and safely care for him. At the time of the termination hearing, Diane had still not obtained suitable housing and there was no expectation of when that might happen. Although Diane was still awaiting DDS services, the caseworker testified that DDS services would only assist Diane in caring for herself and not her children. The caseworker indicated that due to Diane's low functioning she could not protect E.J., and that there were no services that could be offered that would change that fact or result in successful reunification. We have held that parental rights should not be enforced to the detriment or destruction of the health and well-being of the child. *Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 82 S.W.3d 183 (2002). On this

7

record, with the child's health and safety being paramount, we are not left with a definite and firm conviction that the trial court made a mistake in concluding that there were aggravated circumstances because there was little likelihood that services would result in successful reunification.  Therefore, we affirm the trial court's order terminating appellant's parental rights.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Tabitha McNulty*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.