

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-395

|  |  |
|---|---|
| HARVEY ANDERSON<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD<br><br>APPELLEES | Opinion Delivered: SEPTEMBER 21, 2016<br><br>APPEAL FROM THE CRAIGHEAD<br>COUNTY CIRCUIT COURT,<br>WESTERN DISTRICT<br>[NO. 16JV-14-29]<br><br>HONORABLE MELISSA BRISTOW<br>RICHARDSON, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Harvey Anderson appeals from the termination of his parental rights to his son, M.A., who was born on January 16, 2014.[1] On appeal, Mr. Anderson argues that because he has a disability within the purview of the Americans with Disabilities Act (ADA), the case plan should have been modified to accommodate his disability pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(b) (Repl. 2015). Mr. Anderson contends that appellee Arkansas Department of Human Services' (DHS's) failure to make such modifications resulted in premature termination of his parental rights, and that the order terminating his parental rights should be reversed. We affirm.

---

[1] The child's mother, Marsha Davis, also had her parental rights terminated. However, Ms. Davis is not a party to this appeal.

We review termination of parental rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). We will affirm a trial court's finding that a disputed fact was proved by clear and convincing evidence unless that finding is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case began on October 27, 2014, when DHS filed a motion for emergency custody of M.A. Attached to the petition was an affidavit stating that Marsha Davis had stabbed Mr. Anderson in the face with a screwdriver, resulting in Ms. Davis's arrest for felony domestic battery.[2] The attack occurred in the couple's home in the presence of the child. Upon inspection of the home, the family-service worker found a plastic baggie containing cocaine residue and a crack pipe. Mr. Anderson smelled of alcohol and had very slurred speech. Based on the information in the affidavit, the trial court entered an ex parte order for emergency custody on the same day DHS's petition was filed.

___

[2] Ms. Davis has remained incarcerated since then.

On December 12, 2014, the trial court entered an adjudication order finding M.A. to be dependent-neglected based on parental unfitness as to both parents. The goal of the case was reunification. Among other things, Mr. Anderson was ordered to cooperate with DHS, remain drug free, submit to random drug screens, complete parenting classes, and maintain safe and stable housing. DHS was ordered to arrange appropriate visitation.

In a review order entered on April 14, 2015, the trial court found that Mr. Anderson had complied with some of the case plan, but had not visited the child on a regular basis, had tested positive for cocaine, and had not maintained safe and stable housing. In the review order, the trial court directed Mr. Anderson to complete long-term inpatient drug rehabilitation, and ordered that Mr. Anderson be drug-free before being allowed additional visits with the juvenile.

On October 22, 2015, the trial court entered a permanency-planning order changing the goal of the case to termination of parental rights and adoption. The trial court found that Mr. Anderson had failed to complete drug rehabilitation as ordered and had tested positive for cocaine on multiple occasions. In the permanency-planning order, the trial court appointed counsel to represent Mr. Anderson.

DHS filed a petition to terminate Mr. Anderson's parental rights on November 17, 2015. After a hearing, the trial court entered an order terminating Mr. Anderson's parental rights on February 12, 2016.

In the termination order, the trial court found by clear and convincing evidence that termination of Mr. Anderson's parental rights was in M.A.'s best interest. The trial court also found clear and convincing evidence of three statutory grounds under Arkansas Code

Annotated section 9-27-341(b)(3)(B) (Repl. 2015). Pursuant to subsection (ii)*(a)*, the trial court found that the juvenile had lived outside the home of the parent for twelve months and that the parent had willfully failed to maintain meaningful contact with the juvenile. The trial court also found, under subsection (iv), that Mr. Anderson had abandoned the juvenile. Finally, pursuant to subsection (vii)*(a)*, the trial court found that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juvenile in the custody of the parent was contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ashley Middleton, a family-service worker assigned to this case, testified that although Mr. Anderson had entered a long-term drug-rehabilitation program, he left the program long before completion. Ms. Middleton further stated that Mr. Anderson had tested positive for cocaine on numerous occasions. Ms. Middleton testified that over the course of this case, Mr. Anderson had "hit and miss" visits with the child and had not visited the child at all since April 2015. The only time Mr. Anderson saw M.A. after April 2015 was when he met briefly with the child when they were both in attendance at the October 2015 permanency-planning hearing. Ms. Middleton indicated that, on her last visit to Mr. Anderson's home, the home was inappropriate for a child and that there were multiple people living there and numerous others coming and going. Ms. Middleton stated that M.A. could not be safely returned to Mr. Anderson and that M.A. was adoptable. She

recommended termination of Mr. Anderson's parental rights based on the best interest of the child.

Mr. Anderson testified that he has a learning disability and has difficultly reading and writing.[3] He stated that he receives social security disability benefits. Mr. Anderson stated that he requested an attorney from DHS, but was not provided one until the day of the permanency-planning hearing. Mr. Anderson admitted at the hearing that if he were drug tested he would probably test positive for marijuana.

At the termination hearing, Mr. Anderson's counsel asserted that Mr. Anderson had "some learning disability" and a limited ability to read and write, which put him at a disadvantage. Mr. Anderson's counsel argued that DHS should have recognized that disadvantage and offered Mr. Anderson appropriate services, which he believed to be the appointment of an attorney at the beginning of the case rather than waiting until the termination hearing. Mr. Anderson's counsel argued that, because there was no offer of appropriate family services, DHS had failed to meet its burden of proof with regard to the "other factors" ground for termination. The trial court disagreed with Mr. Anderson's argument, stating:

> Mr. Anderson's reference to a learning disability does not implicate the reasonable accommodations that the Department is tasked with making in the termination context, given that there has been no documentation of how certain accommodations on the Department's part would have in any way caused a different result for Mr. Anderson. His noncompliance with this case plan has been willful. He has refused to participate in drug treatment. He has refused to maintain his sobriety, and he has refused to visit with his child. The court has heard no evidence

---

[3] In Ms. Middleton's testimony, she stated that Mr. Anderson never told her he could not read or write, and that he signed a case plan indicating that he could read and understand English. She did, however, acknowledge that Mr. Anderson had mentioned that he has a learning disability.

to indicate that [a] learning disability could have been handled in a different way, shape, or form that would have changed the result in terms of his behavior.

The trial court further noted that DHS does not have the ability to provide legal services to the parent, and that nothing prevented Mr. Anderson from obtaining counsel prior to the termination hearing.

In this appeal, Mr. Anderson argues that his parental rights were terminated prematurely because he has a disability within the purview of the ADA, and that DHS should have modified the case plan to accommodate his disability pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(b)*. Subsection (vii) of the above statute provides, in its entirety, that a trial court may terminate parental rights if it finds by clear and convincing evidence:

(vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity of indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

*(b) The department shall make reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., to parents with disabilities in order to allow them meaningful access to reunification and family preservation services.*

*(c)* For purposes of this subdivision (b)(3)(B)(vii), the ability or incapacity to remedy or rehabilitate includes, but is not limited to, mental illness, emotional illness, or mental deficiencies[.]

(emphasis added). In the Americans with Disabilities Act, "disability" is defined at 42 U.S.C. § 12102(1) (2009) as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment [.]

SLIP OPINION

Mr. Anderson asserts that he satisfies the above definition because he has a learning disability that substantially limits his major life activities of reading, writing, and understanding the English language. He further posits that his caseworker was aware of his disability, but failed to make reasonable accommodations as required by statute, including the possibility of appointing an attorney at an earlier stage in the proceedings to help assist him by explaining to him the case plan and language contained in the trial court's orders. He contends that, because DHS failed to make reasonable accommodations for his disability, the order terminating his parental rights should be reversed.

We conclude that the argument being raised on appeal was not sufficiently raised and developed before the trial court. In Mr. Anderson's answer to the termination petition, he made no claim of any disability. In his testimony, Mr. Anderson did not identify what type of disability he has, and stated only that he does not read and write well, despite his signature on a case plan representing that he could read and understand English.[4] There was also no evidence that Mr. Anderson had a "record" of any impairment covered by the ADA or that he was "regarded" as having such an impairment. Mr. Anderson's counsel stated only that Mr. Anderson had some unidentified learning disability related to his alleged reading deficiency and that DHS should have recognized his disadvantage and offered appropriate services (as opposed to reasonable accommodations). Mr. Anderson's counsel never specifically claimed that Mr. Anderson had a disability within the purview of the ADA, nor was the ADA even mentioned at the hearing. The statute Mr. Anderson now relies on, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(b), was not brought to the trial court's attention.

---

[4] The trial court specifically found that Mr. Anderson's testimony was not credible.

Mr. Anderson's counsel failed to identify what services Mr. Anderson needed, other than to be appointed counsel at an earlier date, but the appointment of counsel is not a service within the capacity of DHS to provide.[5] An argument must be raised and developed before the trial court to be preserved for review. *Harrison v. Phillips*, 2012 Ark. App. 474, 422 S.W.3d 188. Because the argument Mr. Anderson now raises on appeal was not sufficiently presented and developed to the trial court below, we hold that it has not been preserved for review.

We further conclude that, even if appellant's argument had been preserved for review, it could provide no grounds for reversal. The requirement that DHS make reasonable accommodations for a disability is not an overarching mandate applicable to all grounds for termination under Ark. Code Ann. § 9–27–341(b)(3)(B), as contended by the appellant, but is instead one of the elements contained only in the "other factors" ground for termination codified at Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii). In this case, in addition to the "other factors" ground, the trial court found two additional grounds for termination under subsections (ii)*(a)* (juvenile has lived outside the home for twelve months and parent willfully failed to maintain meaningful contact) and (iv) (parent has abandoned the juvenile). The record showed that Mr. Anderson visited M.A. only sporadically after M.A.'s removal and failed to visit the child at all (save one happenstance meeting at the permanency-planning hearing) during the ten months preceding the

---

[5] Pursuant to Ark. Code Ann. § 9-27-341(h)(1)(C), the trial court informed Mr. Anderson in the ex parte emergency-custody order that he had the right to counsel. The record does not show that Mr. Anderson asked the trial court to appoint him counsel at any time prior to the permanency-planning hearing, despite his attendance at numerous proceedings before the court.

termination hearing. Only one ground is necessary to terminate parental rights. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. When a parent does not challenge all of the trial court's findings as to statutory grounds for termination, an unchallenged ground is sufficient to affirm the termination order. *Id.* Mr. Anderson's only point on appeal challenges DHS's failure to provide ADA accommodations, and he fails to separately challenge the trial court's findings as to the other two statutory grounds, either of which supports the termination of his parental rights.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Tina Bowers Lee*, Ark. Pub. Defender Comm'n, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.