
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-742

| | |
|---|---|
| LATISHA BANE AND JOSEPH BANE<br>APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br>APPELLEES | Opinion Delivered: DECEMBER 14, 2016<br><br>APPEAL FROM THE CONWAY<br>COUNTY CIRCUIT COURT<br>[NO. 15JV-15-21]<br><br>HONORABLE TERRY SULLIVAN,<br>JUDGE<br><br>AFFIRMED; MOTION GRANTED |

**KENNETH S. HIXSON, Judge**

Appellant Latisha Bane and appellant Joseph Bane appeal separately from the termination of their parental rights to their fourteen-year-old daughter N.B., twelve-year-old son A.B.1, and nine-year-old daughter A.B.2. On appeal, Latisha argues that she received improper service of process, and further argues that the case should not have gone forward without a determination of whether an attorney ad litem should have been appointed for her. Latisha also challenges the sufficiency of the evidence to support the termination of her parental rights. Joseph's counsel has filed a no-merit appeal and a motion to withdraw, stating that there is no issue of arguable merit to advance on appeal and that she should be relieved of counsel. We affirm both appeals, and we grant Joseph's counsel's motion to be relieved.

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must

exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence.  Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.  *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).  The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.  *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.  *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

Latisha and Joseph lived with their three children in a trailer in Hattiesville, Arkansas. In 2011, Latisha suffered a stroke, which rendered her unable to care for herself.  Shortly thereafter, Joseph was appointed as Latisha's permanent guardian.  The order appointing Joseph as guardian stated that the guardianship was necessary due to Latisha's lack of capacity to make decisions for her health or safety, and that Latisha's impairments were not expected to improve.  After his appointment as guardian, Joseph became the caretaker of both Latisha and the children.

These proceedings began on March 3, 2015, when appellee Arkansas Department of Human Services (DHS) exercised an emergency hold on all three children.  According to a caseworker's affidavit, Joseph had been arrested on misdemeanor warrants and, as a result of Latisha's medical condition, she was unable to care for the children.  Police investigators

informed the caseworker that Joseph had admitted that he supplied alcohol to his oldest daughter, N.B., who was then twelve years old, as well as to a twenty-year-old woman. Joseph had further acknowledged to police that he witnessed a sexual assault by the woman on his daughter N.B., but that he had failed to report the incident or cooperate in the investigation. The police investigator stated that Joseph would be charged with contributing to the delinquency of a minor and endangering the welfare of a minor, and that it was uncertain how long Joseph would remain in jail. Based on these allegations DHS filed a motion for emergency custody of all three children, and on March 6, 2015, the trial court entered an ex parte order for emergency custody finding that immediate removal of the children was necessary to protect their health and safety.

On June 22, 2015, the trial court entered an order adjudicating the children dependent-neglected. The adjudication was based on the parents' stipulation of neglect based on Joseph's failure to take reasonable action to protect his twelve-year-old daughter from sexual abuse or to report the abuse after he observed it. At the time of the adjudication the parents had not participated in the case despite numerous attempts by a caseworker to contact the parents and develop a case plan. The goal of the case was reunification. The trial court ordered DHS to offer services toward reunification and ordered the parents to cooperate with DHS and comply with the case plan.

A review order was entered on September 30, 2015, and the goal of the case continued to be reunification. Trina Yerby appeared at the review hearing as counsel for Latisha and Joseph. In the review order, the trial court found that DHS had made reasonable efforts to provide family services including parenting classes, drug-and-alcohol assessments,

psychological evaluations, home visits, counseling, transportation, and visitation with the children. The trial court found that Latisha had minimally complied with the case plan, in part due to her disability. The trial court also found that Joseph had minimally complied with the case plan, stating that he lived in a structurally unsound and filthy home, was unemployed, was abusing pain medication, had tested positive for opiates, and had stopped attending parenting classes. The trial court noted that the parents had visited the children only five times since the children were taken into DHS custody.

Another review order was entered on January 7, 2016, at which time the case goal was changed to termination of parental rights and adoption. Trina Yerby appeared at the hearing as counsel for the parents. In that order, the trial court again found that both parents had minimally complied with the case plan. The trial court found that Joseph had not completed parenting classes, was discharged from counseling for failure to participate, and had tested positive for benzodiazepines without a prescription. The trial court stated that Joseph had made no progress at all on cleaning or repairing the home, that there were huge holes in the floor, and that there were multiple animals living there causing feces and urine to accumulate and strong odors to permeate the trailer. The trial court noted that the parents had attended only eight visits with the children since the case had begun.

DHS filed a petition to terminate both parents' parental rights on March 1, 2016. The termination hearing was held on May 5, 2016. Trina Yerby appeared at the termination hearing as counsel for the parents.

On May 23, 2016, the trial court entered an order terminating both Latisha's and Joseph's parental rights to their three children. The trial court found by clear and convincing

evidence that termination of parental rights was in the children's best interest, and the court

specifically considered the likelihood that the children would be adopted, as well as the

potential harm of returning them to the custody of their parents as required by Arkansas

Code Annotated section 9-27-341(b)(3)(A)(i)&(ii) (Repl. 2015).  The trial court also found

clear and convincing evidence of the following four statutory grounds under subsection

(b)(3)(B):

> (i)*(a)*  That a juvenile has been adjudicated by the court to be dependent-neglected
> and has continued to be out of the custody of the parent for twelve (12) months and,
> despite a meaningful effort by the department to rehabilitate the parent and correct
> the conditions that caused removal, those conditions have not been remedied by the
> parent.
>
> . . . .
>
> (ii)*(a)*  The juvenile has lived outside the home of the parent for a period of twelve
> (12) months, and the parent has willfully failed to provide significant material support
> in accordance with the parent's means or to maintain meaningful contact with the
> juvenile.
>
> . . . .
>
> (iv)  A parent has abandoned the juvenile.
>
> . . . .
>
> (vii)*(a)*  That other factors or issues arose subsequent to the filing of the original
> petition for dependency-neglect that demonstrate that placement of the juvenile in
> the custody of the parent is contrary to the juvenile's health, safety, or welfare and
> that, despite the offer of appropriate family services, the parent has manifested the
> incapacity or indifference to remedy the subsequent issues or factors or rehabilitate
> the parent's circumstances that prevent the placement of the juvenile in the custody
> of the parent.

At the termination hearing, Joseph testified that he continued to care for his wife and

that they had recently moved out of their trailer and into his mother's trailer.  Joseph stated

that they moved in with his mother because their trailer was "falling apart" and the floors

SLIP OPINION

were falling through. Joseph acknowledged that he had a fairly long criminal history, and that he had recently pleaded guilty to contributing to the delinquency of a minor after furnishing alcohol to the twenty-year-old woman who sexually assaulted his older daughter. Joseph denied, however, giving alcohol to his daughter. Joseph testified that he is currently unemployed, but explained that he had significant back problems and had filed for disability benefits.

Michelle Mallett was the caseworker assigned to this case. Ms. Mallett testified that DHS had provided extensive services, including parenting classes, home visits, homemaker services, counseling, case management, visitation, and transportation assistance. Ms. Mallett stated that, despite the offer of DHS services, the parents had made no measurable progress on the case plan. Ms. Mallett stated that Joseph had failed to work toward reunification with the children, and that Latisha was incapable of caring for the children as a result of her stroke. Ms. Mallett testified that the appellants' trailer was found to be in a filthy, unsafe, and unlivable condition on each home visit. She further stated that, despite the offer of transportation, appellants had visited the children only nine times in a fourteen-month period. Ms. Mallett was also concerned about Joseph's drug use and the potential harm of returning the children to an unstructured and unsafe environment. Ms. Mallett indicated that the children were doing very well in foster care and were adoptable. Ms. Mallett stated that there were no additional services to be offered by DHS that could remedy the problems that caused the children's removal, and she thought that termination of parental rights was in the children's best interest.

In Latisha's appeal to this court, she first argues that termination of her parental rights should be reversed because there was improper service on her. The adjudication order stated that Latisha was personally served pursuant to Rule 4 of the Arkansas Rules of Civil Procedure. The affidavit of service of the petition to terminate parental rights shows that Latisha was served by serving Joseph at their residence. Rule 4(d)(3) provides that when a defendant has been appointed a guardian, service shall be made upon the individual and the guardian. Latisha argues that, contrary to the rule stated above, Joseph was not served in his capacity as her guardian. Latisha further notes that, after Joseph was appointed as her guardian in 2011, he appointed Karen Reagler to accept service of process with respect to the guardianship proceedings. Latisha contends that because Karen Reagler was never served in this matter as agent for service of process, service was defective and this case should be reversed and dismissed.

We hold that Latisha's challenge to proper service has been waived because the record fails to reflect any objection below. Although service of valid process is necessary to give a court jurisdiction over a defendant, the defense of personal jurisdiction may be waived. *Affordable Bail Bonds v. State*, 2015 Ark. App. 44. We have held that any defects in process or the service thereof are cured or waived by the appearance of the defendant without raising an objection, and he or she is precluded from thereafter taking advantage of the defect. *Id.* In this case, Latisha appeared at the adjudication hearing, review hearings, and termination hearing without raising an objection. Latisha was represented by counsel in each of the pertinent hearings, and there is nothing in the record showing that Latisha or

her attorney requested any inquiry into improper service. Therefore, we conclude that this argument has been waived.

Latisha next argues that, due to her questionable competency and capacity and the fact that her legal guardian, Joseph, was not adequately protecting her interests, this case should not have gone forward without ascertaining whether a guardian ad litem should have been appointed to assist her in defense of her parental rights. Latisha was represented by counsel in each of the pertinent hearings, and there is nothing in the record showing that Latisha or her attorney requested the appointment of an attorney ad litem below. It is well settled that we will not consider arguments raised for the first time on appeal. *See Patel v. Patel*, 2015 Ark. App. 726, 479 S.W.3d 580. Because this argument is being raised for the first time on appeal, it is not preserved for review.

Finally, Latisha challenges the sufficiency of the evidence supporting termination of her parental rights. She contends that none of the statutory grounds found by the trial court were supported by the evidence, and further asserts that termination of her parental rights was not in the best interest of the children. She contends that, other than parenting and visitation, all of the services provided by DHS were provided exclusively to Joseph. She further asserts that DHS and the trial court allowed her parental rights to simply hinge on Joseph's choices and efforts because she was legally and physically dependent on him. Although she concedes that there was sufficient evidence that the children were adoptable, Latisha argues that there was a lack of proof of whether the children would be at a potential risk of harm after she has been given a meaningful opportunity to participate in the DHS case as a parent.

Only one statutory ground is necessary to terminate parental rights. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). In this case we hold that the trial court did not clearly err in concluding that, in accordance with Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*, the juveniles had been adjudicated dependent-neglected and had continued outside the home for twelve months, and that despite a meaningful effort by DHS to rehabilitate the parents the conditions causing the children's removal had not been remedied.

In this case the children were removed after Joseph had furnished alcohol to his twelve-year-old daughter and failed to report a sexual assault. The children were deemed, by stipulation of the parents, to be at serious risk of harm due to neglect, and fourteen months after the children's removal the children could not be safely returned to their parents' custody. The record demonstrates that the conditions causing the children's removal had not been remedied by the parents. The caseworker testified that Latisha was incapable of caring for the children. The caseworker testified that extensive services had been offered by DHS, but that there were no further services that would result in successful reunification of the children with their parents. Specifically, the caseworker testified:

> During the course of this case, we've offered the parents parenting classes, random drug screens, drug and alcohol assessment for dad, psych eval for the father, homemaker services, foster care, board payments, clothing, residential treatment, PACE evals, counseling, medical services, educational services, transportation assistance, visitation, [and] case management. . . . There aren't any other set of services in our toolbox that I could offer this family that would help them step up and remedy the circumstances that brought the children into [foster] care. . . . In regard of Ms. Bane . . . I don't think there's any set of services we could offer that would allow her to raise these children.

We have held that parental rights will not be enforced to the detriment or destruction of the health and well-being of the children. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 90, 455 S.W.3d 347. We conclude that there was evidence in the record to support the trial court's determination that there were meaningful DHS efforts in this case but that the conditions causing removal had not been remedied more than one year after the children's removal.

Furthermore, we find no clear error in the trial court's finding that termination of Latisha's parental rights was in the best interest of the children. The testimony showed that the children were making remarkable progress in their structured and stable foster-care placement and were adoptable. With the children's father's rights being terminated and Latisha being incapable of caring for the children, termination and adoption was necessary to achieve permanency and was in the children's best interest.

We acknowledge that, in the conclusion section of her brief, Latisha cites Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(b)*, which provides that DHS shall make reasonable accommodations to parents with disabilities in accordance with the Americans with Disabilities Act. Latisha asserts that such accommodations were not provided to her. However, Latisha did not raise this argument below or request ADA accommodations. Moreover, in *Anderson v. Arkansas Department of Human Services*, 2016 Ark. App. 428, ___ S.W.3d ___, we observed that the requirement that DHS make reasonable accommodations for a disability is not an overarching mandate applicable to all grounds for termination, but instead is one of the elements contained only in the "other factors" ground. In this case,

we are affirming the termination of Latisha's parental rights under the "failure to remedy ground," and not the "other factors" ground.

We now turn to Joseph's no-merit appeal. In compliance with *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Joseph's counsel has examined the record for adverse rulings, explaining why each adverse ruling would not support a meritorious ground for reversal. Joseph's counsel has accurately asserted that the only adverse ruling was the termination itself. A copy of Joseph's counsel's brief and motion to withdraw were mailed to Joseph, along with information advising him of his right to file pro se points, but no pro se points have been filed.

We agree with Joseph's counsel that any challenge to the sufficiency of the evidence supporting the termination of his parental rights would be wholly without merit. The evidence showed that Joseph's conduct caused the removal of the children from the home, and that in the fourteen months following their removal he had not complied with the case plan, made efforts toward reunification, or made any demonstration that the children could be safely returned to his custody. We agree with Joseph's counsel that the "other factors" statutory ground was established, and we further conclude that the "failure to remedy" ground was proved as to Joseph. And on this record the trial court did not clearly err in finding that termination of Joseph's parental rights was in the children's best interest.

After examining the record and the briefs presented, we affirm the termination of Latisha's parental rights. Moreover, we have determined that Joseph's counsel has complied with our requirements for no-merit cases and that his appeal is wholly without merit.

11

Accordingly, we affirm the order terminating both appellants' parental rights, and we grant

Joseph's counsel's motion to be relieved from representation.

Affirmed; motion granted.

VIRDEN and GRUBER, JJ., agree.

*Dusti Standridge*, for appellant Latisha Bane.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant Joseph Bane.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.