Cite as 2019 Ark. App. 406

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-355

| | |
|---|---|
| DEANA DAVIS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** SEPTEMBER 25, 2019<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-17-196]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Deana Davis appeals the January 24, 2019 order of the Sebastian County Circuit Court terminating her parental rights to her minor children, J.E., K.E., and E.J. Deana challenges the statutory grounds relied on by the court to terminate her parental rights and makes a general challenge to the court's best-interest finding. We affirm.

### I. *Facts*

On March 26, 2017, Eric Jenkins was arrested for public intoxication, disorderly conduct, refusal to submit to arrest, and third-degree domestic battery. The arrest occurred after Deana reported that Eric had been drinking and attacked her—specifically, that Eric pushed Deana into a window multiple times while the children were near the scene of the incident. A hotline call was made on April 3, 2017, regarding the March 26, 2017 incident.

On April 3, the Arkansas State Police notified appellee, the Arkansas Department of Human Services (DHS), about the domestic-abuse incident between Deana and Eric. On April 4, Deana executed an affidavit in support of a petition for domestic order of protection regarding the events from March 26. DHS initiated a non-court-ordered protective-services case and held a staffing on April 6. Deana agreed to abide by the no-contact order and comply with DHS's recommendations for services, such as domestic-violence classes and HUD housing.

On April 11, DHS held another staffing with Deana at which time she stated that she would not have obtained the no-contact order against Eric had DHS not become involved and that she did not see an issue with his being around the children. Despite this statement, Deana again agreed to abide by the no-contact order and to participate in DHS services.

On April 12, family service worker (FSW) Pearson called Eric to discuss the case and the services that DHS was offering to him. Eric indicated to FSW Pearson that he was residing with Deana's mother, Vicky Davis, and that same day, when FSW Pearson made a home visit to Vicky's residence, Eric fled out the back door because Deana and the children were inside the residence. FSW Pearson found Eric violating the no-contact order with Deana, and she alerted law enforcement, who arrived and arrested both Eric and Deana for the violation. As a result, DHS exercised a seventy-two-hour hold on the children.

On April 17, DHS filed a petition for emergency custody and dependency-neglect of J.E., K.E., and E.J., and on the same day, the circuit court entered an ex parte emergency order of custody for the three children.

On April 20, the circuit court held a probable-cause hearing wherein it found that probable cause existed at the time of the emergency order and continued to exist for the children to remain in DHS's custody. Additionally, the circuit court ordered that Joshua Evans (Joshua)—father of J.E. and K.E.—and Eric—father of E.J.—not be allowed visitation or contact with the children. The probable-cause order was entered on May 12, 2017.

At the adjudication hearing on May 25, the children were adjudicated dependent-neglected based on Deana's stipulation regarding her failure to protect the children. The court further ordered a goal of reunification, and Deana was ordered to comply with the case plan; have stable and appropriate housing, income and transportation; complete parenting classes; complete a drug-and-alcohol assessment and hair-follicle tests and comply with the treatment recommendations therefrom; and submit to random drug screens and visits. Additionally, the court found that Eric was not a fit parent and ordered that he have no contact with Deana or the children while the criminal no-contact order and/or orders of protection were in place. The adjudication order was filed on July 24, 2017.

A review hearing was held on September 21 at which time the circuit court continued the goal of reunification. It found that DHS had complied with the case plan and orders of the court regarding services being rendered. The circuit court also found that Deana had housing, income, and transportation; had completed twenty-one of twenty-six domestic-violence classes; had completed parenting classes; had completed her drug-and-alcohol assessment with treatment underway; had visited the children regularly; had submitted to drug screens and hair-follicle tests; and had completed one couples-counseling session. A review order was filed on November 3, 2017.

A second review hearing took place on November 16 wherein the circuit court continued the goal of reunification. The circuit court again found that DHS had complied with the case plan and orders of the court regarding services being rendered to Deana including, but not limited to, domestic-violence classes. The circuit court noted that Deana had continued to comply with the case plan and orders of the court. The court further found that family counseling had begun with Joshua but that Eric had not yet been added to the counseling sessions. Based on Eric's and Deana's progress, the court approved holiday visits and indicated it would approve a trial home placement with Eric and Deana in the event they obtained independent housing.

The permanency-planning hearing was held on February 8, 2018. The circuit court found that Deana and Eric had made significant and measurable progress toward the case plan and the goal of reunification. DHS was ordered to provide Deana and Eric with information on how to enroll in a second set of parenting classes. Visitation was to remain supervised while the investigations were pending, with DHS having discretion to increase to a trial home placement after the investigations were concluded. The permanency-planning order was filed on March 19.

On May 24, the fifteen months' review hearing was held,[1] and the court found that the goal would remain reunification. The court found that Deana and Eric had (1) obtained stable housing but that the condition of the home needed improvement; (2) obtained income and transportation; (3) completed parenting classes; (4) participated in counseling; (5) visited the children; and (6) submitted to drug screens. The court noted that Deana had

_____

[1]The resulting order was filed on July 16, 2018.

4

completed drug treatment. Deana and Eric were ordered to comply with the referrals for couples counseling, budgeting, and intensive family services when the children were placed in their home. The circuit court afforded DHS discretion to increase visitation with the parents up to and including a trial home placement.

At some point after the May 24 hearing, Eric and Deana began unsupervised visits with the children. Prior to July 9, the attorney ad litem filed a motion to suspend visitation between Eric and the children and for Deana's visits to be supervised by DHS. In the motion, the attorney ad litem alleged that at one visit, Eric slapped K.E. on the leg and that at another visit in early July 2018, Eric slapped K.E. in the face, after which the police were called and Eric was arrested and charged with Domestic Battering in the Second Degree (2nd offense) with the victim being under twelve years of age. The attorney ad litem further alleged that K.E. had marks on her leg and bruising across her nose and under her eye and that Deana told K.E. not to report the abuse that occurred in July 2018. Additionally, the attorney ad litem alleged that Eric had attempted to hit Deana; Eric had called K.E. and Deana "bitch"; Deana returned the children to the foster home with lice; and Eric was asked to leave couples counseling because he was verbally abusive. As a result, Eric was restrained by the criminal court from contacting K.E. or her family.

On July 31, DHS filed its termination-of-parental-rights (TPR) petition in which it alleged three statutory grounds to terminate Deana's parental rights: (1) the children had been adjudicated by the court to be dependent-neglected and have continued to be out of Deana's custody for twelve months and, despite meaningful efforts by DHS to rehabilitate Deana and correct the conditions that caused removal, those conditions had not been

remedied pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2017); (2) because Deana manifested the incapacity or indifference to remedy subsequent factors that arose since the inception of the case pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*; and (3) Deana subjected the children to aggravated circumstances with little likelihood of successful reunification pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)*.

On August 30, the court held a review hearing wherein it changed the goal of the case to concurrent goals of reunification and adoption. The circuit court ordered that Deana's visits occur in a therapeutic setting and that visits between Eric and the children not occur unless the new no-contact order was amended and the therapist recommended visits.

The TPR hearing lasted two days—October 25–26, 2018. Deana; J.E.'s therapist, Michael Schwarz; and Deana's therapist, Michael Steinbeck, testified. The next day, testimony was provided by the court appointed special advocate (CASA), Dana Deason; Department of Children and Family Services (DCFS) resource worker, Brandon Smith; Sheryl Hollingshead, therapist for K.E. and E.J.; K.E.; DCFS caseworker Tehrina Means; and the foster mother, Dwaina Harry.

The circuit court ruled from the bench terminating Deana's parental rights on all three grounds: failure-to-remedy; subsequent-factors; and aggravated circumstances.[2] Additionally, the court found by clear and convincing evidence that TPR was in the best

---

[2]Termination of Joshua's and Eric's parental rights are not part of this appeal. This appeal concerns termination of only Deana's parental rights.

interest of the children based on their adoptability and the potential harm that would result if they were returned to Deana. Specifically, the court found that although Deana claimed that she had been separated from Eric for three months, she had been in a twelve-year relationship with him, and based on Deana's testimony, the court did not believe this dangerous relationship was over. The TPR order was entered on January 24, and Deana filed a timely notice of appeal on February 11, 2019.

II. *Standard of Review and Applicable Law*

We reiterated our standard of review in *Wright v. Arkansas Department of Human Services*, 2019 Ark. App. 263, at 9, 576 S.W.3d 537, 543:

> Termination-of-parental-rights cases are reviewed de novo. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. As with all issues when addressing child placement, the appellate court affords heightened deference to the circuit court's superior position to observe the parties personally and to weigh credibility.

(Citations omitted.)

Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the child, including consideration of the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically

addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). The order must also find by clear and convincing evidence one or more statutory grounds. Ark. Code Ann. § 9-27-341(b)(3)(B). Proof of only one statutory ground is sufficient to terminate parental rights. *Wright*, *supra*.

### III. *Discussion*

### A. Statutory Grounds Supporting TPR

Deana argues that the court clearly erred in terminating her parental rights pursuant to the "failure to remedy" ground found in section 9-27-341(b)(3)(B)(i)*(a)*. We disagree and hold that the court's finding was not clearly erroneous. Deana availed herself of the services offered by DHS in an attempt to remedy the reasons for removal. She points out that the dependency-neglect action was triggered by domestic violence perpetrated by Eric and by her subsequent failure to protect the children by "violating" the no-contact order. The circuit court ultimately terminated Deana's parental rights as a result of domestic violence again perpetrated by Eric. Deana asserts that she took steps following these incidents to safeguard the children by ending the relationship and precluding him from being in the children's lives. Deana argues that it was clear error for the circuit court to impute Eric's actions to her, which were beyond her control, in order to terminate her parental rights.

Deana acknowledges that she was a battered woman, and at the commencement of the TPR hearing, DHS admitted into evidence various certified copies of domestic-violence cases in which she and the children suffered domestic violence at the hands of Eric. She and Eric had been together for twelve years, during which time she left him five times yet

8

continued to take him back. Deana availed herself of the domestic-violence classes and the therapy and couples counseling that was provided to her by DHS.

Throughout the case, Eric's and Deana's progress was noted by the court; but following the fifteen months' review hearing, Eric's progress had deteriorated to such a point that Deana claimed she would no longer tolerate his escalating temper. Deana testified at the TPR hearing in October 2018 that she had not had any contact with Eric since the slapping incident that resulted in Eric's arrest in July 2018. Deana stated that she had not contacted his family; Eric had not been in her home; and she had not given Eric rides as she had in the past. Deana submits that the domestic-violence classes she completed gave her an opportunity to identify abusive behaviors and red flags within the context of abuse. Deana's therapist, Steinbeck, testified that Deana began to recognize these issues in July following the slapping incident when Eric's circumstances began to deteriorate at a time when, until May 2018, Eric had been controlling his temper. Steinbeck indicated that Deana had made enough progress to understand those red flags moving forward.

We hold that the circuit court did not clearly err in terminating Deana's parental rights based on the failure-to-remedy ground. The children were adjudicated dependent-neglected on May 25, 2017, based on neglect and failure to protect due to Deana's abusive relationship with Eric and her violation of the no-contact order between the children, Eric, and her. Following removal, the children remained out of Deana's custody for over twelve months, and the circuit court consistently made reasonable-efforts findings—none of which were appealed. Additionally, caseworker Means testified at the TPR hearing that DHS offered the following services: parenting classes, domestic-violence classes, drug-and-alcohol

9

assessments and treatment, visitation, transportation, monetary assistance, home visits, staffings, and counseling.

Despite DHS's meaningful efforts, Deana failed to sufficiently correct the conditions that caused the removal of the children. We note that at the TPR hearing, Deana initially testified that Eric was never violent with her before 2017, but she later recanted this testimony and admitted that Eric had pled guilty to assaulting her in 2016, which resulted in a no-contact order. It is undisputed that Deana and Eric had been involved for twelve years, and both Deana and K.E. testified that Deana and Eric had separated and reunited multiple times during that period.

Moreover, Deana testified—and the admitted exhibits confirmed—that Deana consistently violated no-contact orders with Eric or attempted to have them lifted. Additionally, K.E. testified that in July 2018, Deana witnessed Eric slap K.E., and Deana jumped in the way to push Eric off her. K.E. further testified that following this incident, Deana stayed in the home with Eric that evening, and caseworker Means testified that when Deana was questioned about the slapping incident, Deana changed her story and failed to ever explain what happened between K.E. and Eric. Of particular concern is the testimony from Ms. Harry, the foster mother of K.E. and E.J., that Deana told her numerous times that once this case closed, she would move to Oklahoma to reunite with Eric.

One of the family-counseling therapists, Ms. Hollingshead, testified that Deana minimized the danger in the home, made excuses for her behavior, and failed to benefit from the domestic-violence classes; and even Deana testified that she never felt she or her children were in danger with Eric. *See Duncan v. Ark. Dep't of Human Servs.*, 2013 Ark.

10

App. 13, at 6–7 (affirming TPR based on the failure-to-remedy ground because appellant failed to remedy the inability to protect her child from an abusive person); *Harper v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 280, at 6–8, 378 S.W.3d 884, 887–88 (upholding TPR based on the failure-to-remedy ground because of appellant's failure to acknowledge and resolve her substance-abuse issues).

This court has consistently held, "Even full compliance with the case plan is not determinative; the issue is whether a parent has become a stable, safe parent able to care for his or her child." *E.g.*, *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371. Although the circuit court stated that Deana had "benefited somewhat from services," the court found that after eighteen months of services, she could not safely be reunited with her children because she failed to acknowledge the violence and volatility that continued in her home, and she continued to minimize Eric's violent behavior.

Accordingly, we hold that the evidence was more than sufficient from which the circuit court could find that Deana failed to correct her inability to protect the children from harm; thus, the circuit court did not clearly err in basing TPR on the failure-to-remedy ground.

Because only one statutory ground must be proved to support TPR, we do not address the other statutory grounds found by the circuit court. Ark. Code Ann. § 9-27-341(b)(3)(B).

### B. Best-Interest Determination

The circuit court cannot terminate a parent's parental rights solely on the basis of the grounds set forth in section 9-27-341(b)(3)(B). An order forever terminating parental rights

also shall be based upon a finding by clear and convincing evidence that it is in the best interest of the children, including consideration of the following factors: the likelihood that the children will be adopted if the TPR petition is granted; and the potential harm, specifically addressing the effect on the health and safety of the children, caused by returning them to the custody of the parent, parents, or putative parent or parents. *See* Ark. Code Ann. § 9-27-341 (b)(3)(A)(i)–(ii); *see, e.g., Furnish v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 511, at 12, 529 S.W.3d 684, 690. Neither of these two factors is an essential element of proof in a termination case; thus, neither factor need be established by clear and convincing evidence. *E.g., Corley v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 397, at 9, 556 S.W.3d 538, 543.

Deana does not challenge the circuit court's finding that the children are adoptable; thus, this court is not required to review this finding. *Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, at 13, 433 S.W.3d 271, 278 (affirming the circuit court's TPR decision and declining to address appellant's underdeveloped and unsupported best-interest argument).

Deana does appear to challenge—although not specifically—the circuit court's potential-harm finding. For potential harm, a circuit court is not required to find that actual harm would result. *E.g., Bryant v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 375, at 16–17, 554 S.W.3d 295, 305. Moreover, "[p]ast actions of a parent over a meaningful period of time are good indicators of what the future may hold, and even full compliance with the case plan is not determinative." *Id.* at 17, 554 S.W.3d at 306.

Although Deana essentially completed the case-plan services, evidence indicated that she had been in an off-again-on-again abusive relationship with Eric for twelve years, and even though Deana claimed she left Eric for good, she also testified that she never felt that she or her children were in danger from Eric. Moreover, several witnesses testified that based on their conversations with Deana, they believed she and Eric would eventually reunite. Family-counseling therapist Hollingshead testified that Deana did not benefit from the domestic-violence classes and made excuses for Eric's behaviors, that the children needed stability, and that she did not believe Deana needed to have all three children back in her home because it was "so chaotic."

Although Deana argues that the circuit court clearly erred because the children were bonded to her and expressed a desire to go home, she cites no legal authority to demonstrate that these facts, even if true, would support reversal. *See Guardado v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 16, at 6, 568 S.W.3d 296, 299.

Finally, Deana argues that the circuit court clearly erred in finding that TPR was in the children's best interest because she had eliminated Eric from her life as of July 2018, and she desired to continue participating in DHS services. This court has consistently held that a parent's last-minute attempts to remedy the cause for removal do not justify reversal, and appellate courts do not reweigh the evidence on appeal. *E.g.*, *Arazola v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 109, at 15, 573 S.W.3d 35, 43 (holding that we will not reweigh the evidence on appeal and that credibility determinations are left to the circuit court); *Bean v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 77, at 38, 513 S.W.3d 859, 876 ("[E]vidence presented at a TPR hearing that parents have made overtures toward participating in the

case plan while TPR is looming is an insufficient reason not to terminate parental rights."); *see also Gann v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 275, at 18, 550 S.W.3d 18, 27 ("[A] child's need for permanency and stability override a parent's request for more time to improve the parent's circumstances.").

Given Deana's no-contact-order violations, history of repeated abuse in her relationship with Eric, and inability to protect the children from him, the circuit court's best-interest finding against her was not clearly erroneous. *See Knight v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 602, 533 S.W.3d 592.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.